IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) 1:24-cr-322-CLM-GMB |
| | ) |
| JUSTUS RAMONE EDMONSON | ) |

## PLEA AGREEMENT

The Government and the defendant, **JUSTUS RAMONE EDMONSON**, hereby acknowledge the following plea agreement in this case:

## PLEA

The defendant agrees to (i) plead guilty to **COUNT ONE** of the Indictment filed in the above-numbered and -captioned matter; (ii) consent to forfeiture as described in section **XII** below; and (iii) waive certain rights to direct appeal and collateral attack as outlined in section **IV** of this agreement. In exchange, the United States Attorney, acting on behalf of the Government and through the undersigned Assistant United States Attorney, agrees to recommend the disposition specified below, subject to the conditions in section **VII**.

## TERMS OF THE AGREEMENT

### I. MAXIMUM PUNISHMENT

The Parties understand that the maximum statutory punishment that may be imposed for the crime of Possession of a Machinegun, in violation of Title 18, United States Code, Section 922(o), as charged in **COUNT ONE**, is:

a. Imprisonment for not more than 10 years,

b. A fine of not more than $250,000, or,

c. Both (a. and b.);

d. Supervised release of not more than three years;

e. Criminal forfeiture; and

f. A Special Assessment Fee of $100.

_____
**JUSTUS RAMONE EDMONSON**

### II. FACTUAL BASIS FOR PLEA

The Government is prepared to prove, at a minimum, the following facts at the trial of this case:

On April 29, 2024, video from a home security system showed Justus **EDMONSON** exiting a home on Eulaton Road in Anniston, Alabama, holding a plastic bag, which appeared to contain marijuana, to conduct a drug transaction. Later that day, **EDMONSON** could be seen sitting on the porch of the home. He sat in a chair and took a firearm out of his pants and placed it directly beside him on

what appeared to be a stack of boxes. This firearm, later identified as a Glock .40 caliber pistol modified with a machinegun conversion device designed to enable automatic fire, had an extended magazine and a distinctive blue handle. At this point, it appeared **EDMONSON** was smoking marijuana with three other males on the porch. While the individuals continued their conversation on the porch, a silver vehicle driven by an unidentified woman pulled up to the house. Moments later, a second unidentified female, driving a black vehicle, approached the house with a male child who appeared to be approximately three years old. At this time, **EDMONSON** was sitting on the rail of the front porch with his feet resting on the pile of boxes where his Glock was placed. The adult men were smoking what appeared to be marijuana. **EDMONSON** had the Glock in and out of his waistband at various points.

Sometime later, **EDMONSON** took his Glock out of his waistband and placed it back on the stack of boxes. There was another firearm placed beside him. **EDMONSON** picked up the firearm placed beside him, put an extended magazine into it, and handed it to another adult male. At this time, all four males (including **EDMONSON**), both females, and the male child were sitting on the porch. The aforementioned Glock .40 caliber pistol with the Glock "switch" and blue grip was underneath **EDMONSON**'s chair.

Later into the evening, the group came under gunfire. The group huddled on top of one another in the middle of the porch to avoid the gunfire. One adult male ran away from the shots into a neighboring yard. As a second round of shots began to fire at the group, **EDMONSON** stood up holding his Glock with the extended magazine and blue grip and began to fire. The Glock pistol shot automatic rounds, indicating there was a Glock switch on the weapon enabling it to become fully automatic. As **EDMONSON** fired back in the direction of the shots, one of the

women and the male child rolled off the porch and onto the ground, leaving a pool of blood on the porch. The woman repeatedly stated she was hit in the leg while the child screamed. The child was shot at least twice during the exchange, in the right forearm and in the right thigh. The group dispersed from the porch. **EDMONSON** came back onto the porch holding a firearm in his left hand. **EDMONSON** was hopping on the porch due to a gunshot injury sustained in his left foot. The second female called the police to report the shooting and requested an ambulance. At this time, all the males were inside the home.

Soon after, three adult males, including **EDMONSON**, exited the home hurriedly. One male was seen carrying bags and boxes yelling at **EDMONSON** and another male to help. **EDMONSON** appeared unable to assist due to his gunshot injury.

Officers were dispatched to the scene in response to reports of shots fired and multiple gunshot victims. During the initial investigation, witnesses told Investigator Joey Rollins that a suspect was still inside the home. After knocking and announcing their presence, Investigator Rollins and other law enforcement entered the home to perform a sweep. During this sweep, Investigator Rollins and other law enforcement officers observed a large amount of blood on the floor of the living room, a clear baggie containing a substance thought to be marijuana on the sofa, multiple magazines for a firearm in the closet of a bedroom, and a slide for a Glock inside a half-opened box. Further, they saw blood trails in the kitchen, two rounds of ammunition on the master bedroom dresser, and additional rounds of ammunition on the floor in an adjacent bedroom. Based on the information Anniston Police Department gathered at the scene and through the sweep of the home, Investigator Rollins wrote an affidavit in support of a search warrant of the home.

At 11:07pm, the search warrant was issued to Investigator Rollins for the Eulaton Road home. Immediately after, investigators began to execute the search warrant. The investigators found two Glock magazines and three boxes of Aguila .40 caliber cartridges inside a black backpack in the living room. On top of a console in the living room, they found a clear plastic bag containing a substance believed to be marijuana and one Winchester 9mm luger cartridge. On top of a shelf in the living room, investigators found more suspected marijuana. In the living room, they found a black plate to a Glock and **EDMONSON**'s wallet.

Inside the first bedroom closet, investigators found two fifty round drum magazines, a plastic bag containing eight .40 caliber cartridges, and one electronic scale with drug residue. Inside a cardboard box in the closet, investigators found a Glock 22 .40 caliber handgun (serial number WPN259) and a Glock 23 .40 caliber handgun with a machine gun conversion device (Glock switch) attached to the rear and a blue handle (serial number MZD993). Additionally, inside the closet was a Glock 22 box.

Inside the second bedroom closet, there was a backpack containing a Glock magazine. There was a black garbage bag inside the closet containing three 7.62x39mm cartridges. Strown on the closet floor were sixteen 7.6x39mm cartridges, one .223 caliber cartridge, and one wooden pipe likely used for drug consumption.

Inside the third bedroom, there was a black and white backpack located on top of a dresser containing two .40 caliber cartridges. Next to the black and white backpack was **EDMONSON**'s birth certificate. Next to the bed there was one phone and a shoe box that contained $6,434.87.

In the kitchen, investigators discovered four glass jars and three plastic bags containing a substance believed to be marijuana and drug paraphernalia inside a

cupboard. Further, there was a clear plastic bag containing one machinegun conversion device (Glock switch) inside another cupboard.

On April 30, 2024, Investigator James Harrington applied for a search warrant of the Vivint doorbell security camera footage from April 29, 2024 at 12:01am through April 29, 2024 at 11:59pm. This search warrant was subsequently authorized, and the search of the camera footage revealed the events that transpired both before and during the shooting.

An analysis of the firearm at issue was conducted by ATF Firearms Enforcement Officer John Miller, which revealed that it 1) met the federal definition of a firearm, 2) met the federal definition of a machinegun and 3) moved in interstate and foreign commerce.

**The defendant hereby stipulates that the facts stated above are substantially correct and that the Court can use these facts in calculating the defendant's sentence. The defendant further acknowledges that these facts do not constitute all of the evidence of each and every act that the defendant and/or any co-conspirators may have committed.**

*/s/ Justus Edmonson*
**JUSTUS RAMONE EDMONSON**

### III. RECOMMENDED SENTENCE

Subject to the limitations in section **VII** regarding subsequent conduct and pursuant to Fed. R. Crim. P. 11(c)(1)(B), the Government will recommend the following disposition:

- A. That the defendant be awarded a two (2) level reduction in the defendant's adjusted offense level, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the defendant's criminal conduct. The Government agrees to make a motion pursuant to USSG §3E1.1(b) for an additional one-level decrease in recognition of the defendant's prompt notification to the Government of the intention to enter a plea of guilty. The Government may oppose any adjustment for acceptance of responsibility if the defendant: (1) fails to admit each and every item in the factual stipulation; (2) denies involvement in the offense; (3) gives conflicting statements about the defendant's involvement in the offense; (4) is untruthful with the Court, the Government, or the United States Probation Officer; (5) obstructs or attempts to obstruct justice prior to sentencing; (6) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (7) attempts to withdraw the defendant's plea of guilty for any reason other than those expressly enumerated in the "Waiver of Right to Appeal and Post-Conviction Relief" section of this Plea Agreement;

- B. That the defendant be remanded to the custody of the Bureau of Prisons and incarcerated for a term consistent with the advisory United States Sentencing Guideline range as calculated by the Court at the time of sentencing;

- C. That following the said term of imprisonment, the defendant be placed on supervised release for a period to be determined by the Court, subject to the Court's standard conditions of supervised release;

- D. That the defendant be required to pay restitution to all the victims of the defendant's crimes;

E. That the defendant be required to pay a fine in accordance with the sentencing guidelines should the Court determine that the defendant has the ability to pay a fine, said amount due and owing as of the date sentence is pronounced, with any outstanding balance to be paid in full by the expiration of the term of supervised release;

F. That the defendant be required to comply with the forfeiture provisions set forth in section XII of this agreement; and

G. That the defendant pay a special assessment of $100, said amount due and owing as of the date sentence is pronounced.

## IV. WAIVERS

### A. STATUTE OF LIMITATIONS WAIVER

**In consideration of the recommended disposition of this case, I, JUSTUS RAMONE EDMONSON, hereby understand, acknowledge, and agree that if this plea agreement is set aside for any reason, I will not assert any defense based on any applicable statute of limitations or the Speedy Trial Act, 18 U.S.C. § 3161, *et seq.*, that includes the passage of time from and including the date of this plea agreement until and including the date of entry of any order setting this plea agreement aside.**

### B. RIGHT TO APPEAL AND POST-CONVICTION RELIEF

**In consideration of the recommended disposition of this case, I, JUSTUS RAMONE EDMONSON, hereby waive and give up my right to appeal my conviction and/or sentence in this case, as well as any fines, restitution, and forfeiture orders, the Court might impose. Further, I waive and give up the**

Defendant's Initials JE

right to challenge my conviction and/or sentence, any fines, restitution, forfeiture orders imposed or the manner in which my conviction and/or sentence, any fines, restitution, and forfeiture orders were determined in any post-conviction proceeding, including, but not limited to, a motion brought under 28 U.S.C. § 2255, and any argument that (1) the statute(s) to which I am pleading guilty is or are unconstitutional or (2) the admitted conduct does not fall within the scope of the statute(s).

The defendant reserves the right to contest in an appeal or post-conviction proceeding(s) the following:

1. Any sentence imposed in excess of the applicable statutory maximum sentence(s);

2. Any sentence imposed in excess of the Guidelines range determined by the Court at the time sentence is imposed; and

3. Ineffective assistance of counsel.

The defendant acknowledges that before giving up these rights, the defendant discussed the United States Sentencing Guidelines and their application to the defendant's case with the defendant's attorney, who explained them to the defendant's satisfaction. The defendant further acknowledges and understands that the Government retains its right to appeal where authorized by statute.

I, JUSTUS RAMONE EDMONSON, hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraphs, and that I am knowingly and voluntarily entering into this waiver.

_____
JUSTUS RAMONE EDMONSON

## V.   UNITED STATES SENTENCING GUIDELINES

The defendant's counsel has explained to the defendant, that in light of the United States Supreme Court's decision in *United States v. Booker*, the federal sentencing guidelines are **advisory** in nature. Sentencing is in the Court's discretion and is not required to be within the guideline range. The defendant agrees that, pursuant to this agreement, the Court may use facts it finds by a preponderance of the evidence to reach an advisory guideline range, and the defendant explicitly waives any right to have those facts found by a jury beyond a reasonable doubt.

## VI.   AGREEMENT NOT BINDING ON COURT

The defendant fully and completely understands and agrees that it is the Court's duty to impose sentence upon the defendant and that any sentence recommended by the Government is **NOT BINDING UPON THE COURT,** and that the Court is not required to accept the Government's recommendation. Further, the defendant understands that if the Court does not accept the Government's recommendation, the defendant does not have the right to withdraw the guilty plea.

## VII.    VOIDING OF AGREEMENT

The defendant understands that if the defendant (a) violates any federal, state, or local law or any condition of pretrial release after entering into this plea agreement, (b) moves the Court to accept a plea of guilty in accordance with, or pursuant to, the provisions of *North Carolina v. Alford*, 400 U.S. 25 (1970), (c) tenders a plea of *nolo contendere* to the charges, (d) violates any other term of this plea agreement, and/or (e) does or says anything that is inconsistent with the acceptance of responsibility, the plea agreement will become NULL and VOID at the election of the United States, and the United States will not be bound by any of the terms, conditions, or recommendations, express or implied, which are contained herein. Further, such election will not entitle the defendant to withdraw a previously entered plea.

## VIII.    OTHER DISTRICTS AND JURISDICTIONS

The defendant understands and agrees that this agreement **DOES NOT BIND** any other United States Attorney in any other district, or any other state or local authority.

## IX.    COLLECTION OF FINANCIAL OBLIGATION

In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees to:

- fully disclose all assets in which the defendant has any interest or over which

the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party;

- promptly submit a completed financial statement to the United States Attorney's Office, in a form that it provides and as it directs;

- identify all assets over which the defendant exercises or exercised control, directly or indirectly, within the past five years, or in which the defendant has or had during that time any financial interest;

- take all steps as requested by the Government to obtain from any other parties by any lawful means any records of assets owned at any time by the defendant;

- undergo any polygraph examination the Government may choose to administer concerning such assets and to provide and/or consent to the release of the defendant's tax returns for the previous five years.

The defendant further agrees that the above information, as well as any of the defendant's financial statements and disclosures, will be complete, accurate, and truthful. Finally, the defendant expressly authorizes the United States Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

## X. AGREEMENT REGARDING RELEVANT CONDUCT AND RESTITUTION

As part of the defendant's plea agreement, the defendant admits to the above facts associated with the charges and relevant conduct for any other acts. The defendant understands and agrees that the relevant conduct contained in the factual basis will be used by the Court to determine the defendant's range of punishment under the advisory sentencing guidelines. The defendant admits that all of the crimes listed in the factual basis are part of the same acts, scheme, and course of conduct. This agreement is not meant, however, to prohibit the United States Probation Office or the Court from considering any other acts and factors, which may constitute or relate to relevant conduct. Additionally, if this agreement contains any provisions providing for the dismissal of any counts, the defendant agrees to pay any appropriate restitution to each of the separate and proximate victims related to those counts should there be any and waives objection to the inclusion of that restitution in any order issued by the Court.

## XI. TAX, FORFEITURE AND OTHER CIVIL/ADMINISTRATIVE PROCEEDINGS

Unless otherwise specified herein, the defendant understands and acknowledges that this agreement does not apply to or in any way limit any pending or prospective proceedings related to the defendant's **tax liabilities**, if any, or to any pending or prospective **forfeiture** or other **civil** or **administrative** proceedings.

## XII.  FORFEITURE

The defendant agrees to consent to the immediate entry of a final forfeiture judgment against the defendant, pursuant to Fed. R. Crim. P. 32.2(b)(1), of all proceeds of the offense(s) charged in COUNT ONE of the Information and all property traceable thereto, to wit: a Glock model 23 .40 caliber pistol modified with a machinegun conversion device designed to enable automatic fire, bearing **serial number MZD993**, and any associated magazines and ammunition. For purposes of entering said order of forfeiture, the defendant acknowledges that that the defendant personally obtained, controlled, and benefitted from the above-listed property and a nexus exists between the property listed above and the criminal offenses to which the defendant is pleading guilty.

The defendant acknowledges that if, due to an act or omission of the defendant, directly forfeitable property: (i) cannot be located upon the exercise of due diligence; (ii) have been transferred or sold to, or deposited with, a third party; (iii) have been placed beyond the jurisdiction of the Court; (iv) have been substantially diminished in value; or (v) have been commingled with other property which cannot be divided without difficulty, as a result, the Government is authorized under law to seek the forfeiture of any and all assets of the defendant as substitute

assets for the purpose of satisfying the final order of forfeiture until same is satisfied in full.

The defendant agrees to take all steps as requested by the Government to pass clear title to forfeitable assets to the Government, and to testify truthfully in any judicial forfeiture proceeding. The defendant hereby waives the requirements of Fed. R. Crim. P. 32.2 regarding notice of the forfeiture in the Information, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant also waives the requirements of Fed. R. Crim. P. 43(a) with respect to the imposition of any forfeiture sanction carried out in accordance with this plea agreement. The defendant acknowledges that the defendant understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise the defendant of this, pursuant to Fed. R. Crim. P. 11(b)(1)(J), at the time the defendant's guilty plea is accepted.

The defendant further waives all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including any Double Jeopardy challenges that the defendant may have to the entry of a Forfeiture Order before sentencing, and any claims, defenses or challenges arising under the Excessive Fines Clause of the Eighth Amendment resulting from the forfeiture

imposed as a result of this Information and/or any pending or completed administrative or civil forfeiture actions based upon the course of conduct that provides the factual basis for the forfeiture.

### Non-Abatement of Criminal Forfeiture

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon the defendant's heirs, successors, and assigns until the agreed forfeiture, including any agreed money judgment amount, is collected in full. To the extent that forfeiture pursuant to this agreement requires the defendant to disgorge wrongfully obtained criminal proceeds for the benefit of the defendant's victims, the defendant agrees that the forfeiture is primarily remedial in nature.

## XIII.  IMMIGRATION STATUS

The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which the defendant is pleading guilty. The defendant's guilty plea and conviction make it practically inevitable and a virtual certainty that

the defendant will be removed or deported from the United States if the defendant is not a citizen of the United States. Removal and other immigration consequences are the subject of a separate proceeding, however; and the defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Understanding all of this, the defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that plea may entail, even if the consequence is automatic removal from the United States.

## XIV.   DEFENDANT'S ACKNOWLEDGEMENT

I have read and understand the provisions of this plea agreement consisting of 19 pages. I have discussed the case and my constitutional and other rights with my lawyer. I am satisfied with my lawyer's representation in this case. I understand that by pleading guilty, I will be waiving and giving up my right to continue to plead not guilty, to a trial by jury, to the assistance of counsel at that trial, to confront, cross-examine, or compel the attendance of witnesses, to present evidence on my behalf, to maintain my privilege against self-incrimination, and to the presumption of innocence. I agree to enter my plea as indicated above on the terms and conditions set forth herein.

**NO PROMISES OR REPRESENTATIONS OTHER THAN THOSE IN THE AGREEMENT HAVE BEEN MADE TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS**

BEEN MADE OR FORCE USED TO INDUCE ME TO PLEAD GUILTY.

I further state that I have not had any drugs, medication, or alcohol within the past 48 hours except as stated here:

_____

I understand that this plea agreement will take effect and will be binding as to the Parties **only** after all necessary signatures have been affixed hereto.

I have personally and voluntarily placed my initials on every page of this plea agreement and have signed the signature line below to indicate that I have read, understand, and approve all of the provisions of this plea agreement, both individually and as a total binding agreement.

8/10/25
DATE

*Justus Edmonson*
**JUSTUS RAMONE EDMONSON**
Defendant

## XV. COUNSEL'S ACKNOWLEDGMENT

I have discussed this case with my client in detail and have advised my client of all of my client's rights and all possible defenses. My client has conveyed to me that my client understands this plea agreement and consents to all its terms. I believe the plea and disposition set forth herein are appropriate under the facts of this case and are in accord with my best judgment. I concur in the entry of the plea agreement on the terms and conditions set forth herein.

6/6/2025
DATE

JUSTIN WILSON
Defendant's Counsel

## XVI. GOVERNMENT'S ACKNOWLEDGMENT

I have reviewed this matter and this plea agreement and concur that the plea and disposition set forth herein are appropriate and are in the interests of justice.

PRIM F. ESCALONA
United States Attorney

8/11/2025
DATE

**ALLISON J. GARNETT**
Assistant United States Attorney